1

2

3

4

5

6

7                    **IN THE UNITED STATES DISTRICT COURT**

8                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

9

10   BRYAN L. HILL,                          CASE NO. CV F 03-6903 LJO TAG

11            Plaintiff,            **SUMMARY JUDGMENT/ADJUDICATION**
                                    **DECISION**
12        vs.                       (Doc. 98.)

13   GORDON R. ENGLAND, Secretary of the
     Navy,
14
              Defendants.
15   _____/

16                              **INTRODUCTION**

17           Defendant Gordon R. England, Secretary of the Navy,[1] seeks summary judgment/adjudication

18   on pro se plaintiff Bryan L. Hill's ("Mr. Hill's") age discrimination and related claims on grounds of an

19   absence of evidence to establish elements of Mr. Hill's claims.  Mr. Hill filed no papers to oppose

20   summary judgment/adjudication timely.    This Court considered the Navy's summary

21   judgment/adjudication motion on the record, and VACATES the November 1, 2007 hearing, pursuant

22   to Local Rule 78-230 (c),(h).  For the reasons discussed below, this Court GRANTS the Navy summary

23   judgment.

24                              **BACKGROUND**

25                **Mr. Hill's Navy Employment And Early EEO Complaints**

26           In August 1997, Mr. Hill, then age 55, was employed at the Naval Air Warfare Center Weapons

27   _____

28      [1]        For ease and convenience, defendant Gordon R. England, Secretary of the Navy, will be referred to as the
     "Navy."

                                        1

1   Division ("weapons division") in China Lake, California, as a computer systems acquisition analyst in

2   the Information Technology/Information Management Department ("IT department").  Mr. Hill was

3   responsible for the cost, schedule, performance, and system supportability of the automatic data

4   processing acquisition programs.

5        On November 10, 1997, Mr. Hill filed the first of five Equal Employment Opportunity ("EEO")

6   complaints to allege discrimination based on age, sex, mental disability and reprisal.  On September 10,

7   1999, Mr. Hill filed a second EEO complaint to allege discrimination from reprisal.  Mr. Hill amended

8   the second EEO complaint on December 24, 1999 to allege additional age and mental disability

9   discrimination claims.

10                    **Reduction In Force And Successive EEO Complaints**

11        In November 1999, the weapons division undertook a reduction in force ("RIF") because of: (1)

12   the Navy requirement to implement results of commercial activity outsourcing activities; and (2)

13   business-based factors, including funding reductions, workload realignments and unresolved skills

14   imbalances.  The RIF eliminated Mr. Hill's analyst position in the IT department.  Contract specialists

15   in a separate contracts department assumed responsibilities for the position.

16        After the RIF, Mr. Hill became the automated data processing resources manager, a senior

17   manager in the IT department.  Mr. Hill's grade, salary, retirement and employment benefits were

18   unchanged.   Mr. Hill's job responsibilities included performance analysis, project management,

19   integrated processes, and integration efforts in the IT department.

20        On April 15, 2000, Mr. Hill filed his third EEO complaint to allege discrimination based on age,

21   mental disability (perceived senility), and reprisal.  On October 16, 2000, Mr. Hill filed a fourth EEO

22   complaint to again allege discrimination based on age, mental disability (perceived senility), and reprisal.

23   On May 1, 2002, Mr. Hill filed his fifth EEO complaint to allege discrimination based on age, mental

24   disability (stress and perceived senility) and reprisal.  Mr. Hill amended the EEO complaint 14 times to

25   add incidents of alleged discrimination and reprisal.

26                              **Failure To Perform**

27        During 2002-2003, Brett A. Jacobson ("Mr. Jacobson") was the IT department's deputy director

28   and Mr. Hill's supervisor.  In his declaration, Mr. Jacobson states:

                                          2

From July 2002 to February 2003, Plaintiff provided no work product and ignored my direct orders to perform his duties. Plaintiff's assigned duties were critical to the mission of the Naval Air Warfare Center Weapons Division. Plaintiff's deliberate refusal to perform his duties interfered with the successful operation of the IT/IM Department.

Mr. Jacobson and the Navy further note that Mr. Hill failed to perform his job satisfactorily in that Mr. Hill:

1.     On July 15, 2002 referred to his performance plan as "excrement" and "feces" and told Mr. Jacobson that Mr. Hill was unwilling to draft a new plan and to work with Mr. Jacobson;

2.     On September 24, 2002 told Mr. Jacobson that Mr. Hill would not accept the performance plan, would not perform the work, and would see Mr. Jacobson in court;

3.     On October 1, 2002 told Mr. Jacobson that Mr. Hill had no status report and did not know if Mr. Hill would have future status reports;

4.     On October 31, 2002 told Mr. Jacobson, in response to an e-mail to remind Mr. Hill of a performance monitoring session, that he had no performance report; and

5.     Repeatedly disobeyed Mr. Jacobson's direct orders.

### Medical Documentation

Mr. Jacobson declares that since July 2002, he repeatedly asked Mr. Hill for medical documentation to support Mr. Hill's contention of a medical condition that impacted Mr. Hill's ability to perform his duties. Mr. Jacobson notes that the medical documentation he received showed that Mr. Hill "could perform his duties with the accommodations he had been given." Mr. Jacobson thrice offered Mr. Hill to pay for medical examinations, and Mr. Hill declined the offers.

In January 2003, Mr. Jacobson received additional documentation from William W. Ferguson, M.D. ("Dr. Ferguson"), Mr. Hill's physician. Mr. Jacobson characterizes the documentation to note that Mr. Hill's depression had improved and that Mr. Hill had no significant current impairments and could perform his duties without accommodation. In fact, Dr. Ferguson noted "no current impairment" in response to a medical form question: "How does Mr. Hill's condition affect his daily activities, both on and off the job?"

/ / /

3

**Mr. Hill's Retirement**

Mr. Jacobson sent Mr. Hill a February 12, 2003 memorandum to notify Mr. Hill of a proposal to remove Mr. Hill from employment based on Mr. Hill's refusal to perform his duties.  Bruce D. Bonbright, the IT department's head, sent Mr. Hill a March 13, 2003 memorandum to notify Mr. Hill of removal of his employment, effective March 18, 2003, for failure to perform his duties.

On March 15, 2003, Mr. Hill submitted a request to voluntarily retire as of March 18, 2003.  Mr. Hill's position was not filled, and its duties were reassigned to others in the IT department.

In his declaration, Christopher Perkins ("Mr. Perkins"), a weapons division lead employee/labor relations specialist, states:

> At no time after Plaintiff filed his first EEO complaint in November 1997 did Plaintiff suffer a reduction in salary.  Nor did he suffer the loss of any other employment benefits.  Plaintiff was never demoted and he always received at least fully satisfactory performance ratings.

Mr Hill's five EEO complaints were determined adversely to Mr. Hill in that the Navy, using Mr. Perkins' words, "found no credible evidence of discrimination or retaliation against Plaintiff."

**Mr. Hill's Claims**

Mr. Hill proceeds on his operative third amended complaint which alleges a litany of discriminatory and retaliatory claims and incidents, including:

1.   Mr. Hill was falsely and maliciously accused of referring to a female employee as a "cunt" to her supervisor;

2.   At an official dinner by managers in another division, Mr. Hill was described as "senile" and as a person who "should have been forced to retire five years ago" and was denied an official report regarding his complaint;

3.   The Navy intended "to employ every possible dishonest and corrupt strategy to suppress evidence and corrupt the appropriate processing of Plaintiff's complaints";

4.   Mr. Hill was described as a "GS-12 minion," was screamed and cursed at, and was told that he "knew nothing about engineering" by members of another division;

5.   EEO officers deliberately suppressed evidence regarding Mr. Hill's claims;

6.   Mr. Hill was "exposed to continual public humiliation and an unremitting climate of

4

bias, retaliation, hostility, discrimination, harassment and criminality;

7. Mr. Hill "was provided with a new 'office' in a former windowless concrete 'strong room', isolated from other employees";

8. An employee threatened to kill Mr. Hill if Mr. Hill did not retire;

9. After the RIF, Mr. Hill "was greeted by an 'office' that was completely devoid of any papers, documents and/or records" and "by an empty desk, chair and table covered with dirt and filth."

10. After the RIF, Mr. Hill was provided a new task of monthly updates of performance charts;

11. The Navy targeted Mr. Hill for "future removal due to his high integrity and adherence to the 'rules'";

12. The Navy framed an employee for "selling drugs" because the employee filed an EEO complaint;

13. An EEO officer "deliberately and consciously set out to refute Plaintiff's complaints";

14. The Navy "continues to harass, demean and vilify Plaintiff, long after Plaintiff's termination/forced retirement";

15. Mr. Hill was deprived to engage in Navy-related travel;

16. Mr. Hill was cursed and screamed at and the subject of a written memorandum that he was "sick" mentally and possessed by "hatred and revenge";

17. Mr. Hill was forcibly and publicly removed from the weapons division facility by armed police and "terminated/forcibly retired";

18. The Navy deliberately violated Equal Employment Opportunity Commission ("EEOC") directives to process Mr. Hill's complaints;

19. A EEO complaints manager "deliberately and knowing violate[d] Plaintiff's rights by orchestrating a false and retaliatory offer to have Plaintiff undergo a medical examination at Defendant's expense";

20. The Navy ignored physician opinions that Mr. Hill "should not be further exposed to Defendant employees that [sic] had continuously contributed to a hostile environment

5

against Plaintiff" and "continued to deliberately expose plaintiff to a hostile and debilitory [sic]workplace environment";

21. Defendant's actions were "calculated to increase Plaintiff's level of stress to the breaking point in hopes of provoking Plaintiff into some sort of violent response . . . to substantiate the necessity for Plaintiff's forced removal and termination";

22. A Navy employee denied Mr. Hill remote access to Mr. Hill's workplace computer and directed Mr. Hill's work phone to be disconnected;

23. The Navy improperly processed Mr. Hill's "mixed case" administrative complaint;

24. Navy personnel refused to properly process Mr. Hill's EEO complaints to attempt to frustrate and obstruct his additional complaints; and

25. The Navy's civilian personnel office deliberately lied to a U.S. Senator to fend off an investigation into Mr. Hill's misconduct charges.

In his deposition, Mr. Hill made additional discriminatory and retaliatory claims that:

1. A Navy attorney stated that he intended to violate the law to deny Mr. Hill's Freedom of Information Act requests and so did violate the law;

2. An EEO officer indicated he would investigate and contact witnesses to respond to Mr. Hill's claims but failed to do so;

3. An unidentified person placed a road flare under the eaves of Mr. Hill's house;

4. The Navy "closed ranks" on Mr. Hill who was ostracized, and a person whom Mr. Hill believes to be a coworker's husband gave Mr. Hill "the finger";

5. A Navy attorney criminally misused the Privacy Act to threaten Mr. Hill with criminal prosecution if Mr. Hill reported an alleged death threat against Mr. Hill to the Federal Bureau of Investigation;

6. A person whom Mr. Hill believes was his second-level supervisor left on Mr. Hill's home answering machine a recorded song referring to a little red rooster and Mr. Hill as "barnyard poop";

7. Mr. Hill's son was beaten up for no reason by an illegal immigrant from Scotland, a country in which the Navy has a large base; and

6

8.       A Navy chief petty officer was found dead in the desert from a purported suicide that Mr. Hill opines was a murder by the Navy because the petty officer would have exposed smuggling and drug dealing at China Lake.

Mr. Hill's third amended complaint alleges:

1.       A first cause of action for age discrimination and retaliation in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621-634, ("age discrimination/retaliation cause of action") that the Navy willfully discriminated against Mr. Hill based on his age and evidenced by "public and vocal statements of senility and statements that Plaintiff, 'should have been made to retire five years ago'";

2.       A second cause of action for retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2000e-17, ("Title VII retaliation cause of action") that the Navy retaliated against Mr. Hill's filing EEO complaints;

3.       A third cause of action for failure to accommodate disability, disability discrimination and retaliation in violation of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. §§ 701, et seq., ("failure to accommodate cause of action") that the Navy failed to a reasonably accommodate Mr. Hill after he repeatedly sought to be removed from the IT department's hostile and retaliatory environment;

4.       A fourth cause of action for Title VII wrongful termination based on age, disability and retaliation ("Title VII wrongful termination cause of action") that the Navy wrongly and forcibly removed Mr. Hill from the weapons division facility "until such time as he could be terminated/forcibly retired"; and

5.       A fifth cause of action for failure to comply with processing requirements of the Rehabilitation Act, Title VII and ADEA ("failure to process cause of action") that the Navy's EEO complaint processing scheme circumvented complaint processing procedures to limit liability.

Mr. Hill alleges damages of medical, dental and related expenses, loss of income and benefits, decreased employability, and emotional distress to Mr. Hill and his wife.

/ / /

7

1

2

# DISCUSSION

## Summary Judgment/Adjudication Standards

F.R.Civ.P. 56(b) permits a party against whom a claim is asserted to seek "summary judgment in the party's favor upon all or any part thereof." Summary judgment/adjudication is appropriate when there exists no genuine issue as to any material fact and the moving party is entitled to judgment/adjudication as a matter of law. F.R.Civ.P. 56(e); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The purpose of summary judgment/adjudication is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec.*, 475 U.S. at 586, n. 11, 106 S.Ct. 1348; *International Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985).

On summary judgment/adjudication, a court must decide whether there is a "genuine issue as to any material fact," not weigh the evidence or determine the truth of contested matters. F.R.Civ.P. 56(c); *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598 (1970); *Poller v. Columbia Broadcast System*, 368 U.S. 464, 467, 82 S.Ct. 486 (1962); *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th Cir. 1984). The evidence of the party opposing summary judgment/adjudication is to be believed and all reasonable inferences that may be drawn from the facts before the court must be drawn in favor of the opposing party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986); *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-252, 106 S.Ct. 2505.

To carry its burden of production on summary judgment/adjudication, a moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990). "[T]o carry its ultimate burden of persuasion on the motion, the moving party

8

must persuade the court that there is no genuine issue of material fact." *Nissan Fire*, 210 F.3d at 1102; *see High Tech Gays*, 895 F.2d at 574. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102-1103; *See Adickes*, 398 U.S. at 160, 90 S.Ct. 1598. "If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103; *see High Tech Gays*, 895 F.2d at 574. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323, 106 S.Ct. 2548 (1986) ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make the showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.")

F.R.Civ.P. 56(e) requires a party opposing summary judgment to "set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." "In the absence of specific facts, as opposed to allegations, showing the existence of a genuine issue for trial, a properly supported summary judgment motion will be granted." *Nilsson, Robbins, et al. v. Louisiana Hydrolec*, 854 F.2d 1538, 1545 (9th Cir. 1988). When a summary judgment motion is unopposed, a court must "determine whether summary judgment is appropriate – that is, whether the moving party has shown itself to be entitled to judgment as a matter of law." *Anchorage Associates v. V.I. Bd. of Tax Review*, 922 F.2d 168, 175 (3rd Cir. 1990). A court "cannot base the entry of summary judgment on the mere fact that the motion is unopposed, but, rather must consider the merits of the motion." *United States v. One Piece of Real Property, etc.*, 363 F.3d 1099, 1101 (11th Cir. 2004). A court "need not sua sponte review all of the evidentiary materials

1  on file at the time the motion is granted, but must ensure that the motion itself is supported by

2  evidentiary materials." *One Piece of Real Property*, 363 F.3d at 1101.

3     As discussed below, the Navy has demonstrated that its summary judgment/adjudication motion

4  is well supported and that it is entitled to judgment as a matter of law.

5               **DISCUSSION**

6       **Age Discrimination/Retaliation Cause Of Action**

7     The Navy contends that Mr. Hill's (first) age discrimination/retaliation cause of action fails

8  because Mr. Hill is unable to establish a prima facie case or otherwise show that the Navy's legitimate,

9  nondiscriminatory reasons for its actions were a pretext for a discriminatory or retaliatory motive.

10     ADEA renders unlawful for an employer to "discharge any individual or otherwise discriminate

11  against any individual with respect to his compensation, terms, conditions, or privileges of employment,

12  because of such individual's age." 29 U.S.C. § 623(a)(1).  To establish a disparate age treatment claim,

13  a plaintiff must demonstrate that his/her age "actually played a role in [the employer's decision-making]

14  process and had a determinative influence on the outcome." *Hazen Paper Co. v. Biggins*, 507 U.S. 604,

15  610, 113 S.Ct. 1701 (1993).

16         *Prima Facie Case And Shifting Burdens*

17     Disparate treatment claims have shifting burdens of proof.  A plaintiff has the initial burden to

18  prove by a preponderance of evidence a prima facie case of disparate treatment, that is, a plaintiff must

19  offer evidence that "give[s] rise to an inference of unlawful discrimination." *Texas Dep't of Cmty.*

20  *Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089 (1981); *see St. Mary's Honor Center v. Hicks*, 509

21  U.S. 502, 506, 113 S.Ct. 2742, 2746-2747 (1993).  This may be accomplished with direct evidence of

22  discriminatory intent.  *Vasquez v. County of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003).  "'Direct

23  evidence is evidence which, if believed, proves the fact [of discriminatory animus] without inference

24  or presumption.'" *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1988) (quoting *Davis v.*

25  *Chevron, U.S.A., Inc.*, 14 F.3d 1082, 1085 (5th Cir. 1994)).

26     A plaintiff may also establish a prima facie case of age discrimination through circumstantial

27  evidence.  To do so, the plaintiff must show that he/she was:

28      1.  A member of a protected class (age 40-70);

1    2.    Performing his/her job satisfactorily;

2    3.    Suffered adverse employment action; and

3    4.    Replaced by a substantially younger employee with equal or inferior qualifications.

4  *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 891 (9th Cir. 1994); *see McDonnell Douglas Corp. v. Green*, 411

5  U.S. 792, 802; 93 S.Ct. 1817 (1973); *Cassino v. Reichhold Chemicals, Inc.*, 817 F.2d 1338, 1343 (9th

6  Cir. 1987), *cert. denied*, 484 U.S. 1047, 108 S.Ct. 785 (1988).

7       The fourth elements (replacement by a younger employee) have been treated with flexibility.

8  The United States Supreme Court has gone so far as to note the fact that the plaintiff was replaced by

9  someone outside the protected class is not a proper element of the prima facie case.  *O'Connor v.*

10 *Consolidated Coin Caterers Corporation*, 517 U.S. 308, 312, 116 S.Ct. 1307 (1996).

11      Nonetheless, courts require the plaintiff to "show through circumstantial, statistical, or direct

12 evidence that the discharge occurred under circumstances giving rise to an inference of age

13 discrimination." *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1421 (9th Cir. 1990); *see Coleman*, 232

14 F.3d at 1281(RIF action).  This inference can be established by showing "that others not in her protected

15 class were treated more favorably."  *Washington v. Garrett*, 10 F.3d 1421, 1432 (9th Cir. 1994).

16 Plaintiff must prove that age "made a difference in determining whether or not the plaintiff was retained

17 or discharged."  *Kelley v. American Standard, Inc.*, 640 F.2d 974, 984-985 (9th Cir. 1981).   Age,

18 however, need not be the sole factor in a discharge.  *Cassino v. Reichhold Chemicals, Inc.*, 817 F.2d

19 1338, 1343 (9th Cir. 1987), *cert. denied,* 484 U.S. 1047, 108 S.Ct. 785 (1988).

20      If plaintiff establishes a prima facie case, the burden shifts to the employer "to articulate some

21 legitimate, nondiscriminatory reason" for adverse employment action. *McDonnell Douglas Corp.,* 411

22 U.S. at 802, 93 S.Ct. 1817; *Burdine*, 450 U.S. at 252-253, 101 S.Ct. at 1094-1095; *Coleman v. Quaker*

23 *Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000); *Guz*, 24 Cal.4th at 355-356, 100 Cal.Rptr. at 379.  If the

24 employer presents admissible evidence that one or more of plaintiff's prima facie elements is lacking

25 or that the adverse employment action was based on legitimate, nondiscriminatory factors, the employer

26 is entitled to summary judgment unless the plaintiff produces admissible evidence to raise a triable issue

27 of fact material as to the employer's showing.  *See Caldwell v. Paramount Unified School District*, 41

28 Cal.App.4th 189, 203, 48 Cal.Rptr.2d 448, 457 (1995).  If the employer carries its burden, plaintiff must

have an opportunity to prove by a preponderance of evidence that the legitimate reasons offered by the employer were not its true reasons but were a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804; 93 S.Ct. 1817; *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089.

Despite the burden shifting, the ultimate burden of proof remains always with the plaintiff to show that the employer intentionally discriminated because of the plaintiff's age. *Coleman*, 232 F.3d at 1281; *see Burdine*, 450 U.S. at 253, 101 S.Ct. 1089; *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1420-1421 (9th Cir. 1990). By applying the shifting burdens of production in the summary judgment context, "the judge [will] determine whether the litigants have created an issue of fact to be decided by the jury." *Burdine*, 450 U.S. at 255, n. 8, 101 S.Ct. at 1094, n. 8.

### *Satisfactory Job Performance*

The Navy contends that Mr. Hill is unable to establish a prima facie case for age discrimination in that he did not satisfactorily perform his job. The Navy notes that during July 2002 to March 2003, Mr. Hill refused to perform his assigned duties, ignored Mr. Jacobson's directives, and repeatedly advised that he would not perform his assigned work.

The record before this Court reveals that Mr. Hill refused to perform his job duties and in turn obstructed the IT department's operation to provoke the Navy to seek his removal. There is no evidence that Mr. Hill satisfactorily performed his job in the months prior to his retirement.

### *Adverse Employment Action*

The Navy argues that Mr. Hill did not suffer adverse employment action. An adverse employment action requires "a material change in the terms and conditions of a person's employment." *Chuang v. Univ. of California Davis, Bd. of Trustees*, 225 F.3d 1115, 1126 (9th Cir. 2000); *see Kocsis v. Multi-Care Management, Inc.*, 97 F.3d 876, 885 (6th Cir. 1996). Inquiry whether employment action is adverse requires a case-by-case determination based upon objective evidence. *Blackie v. State of Maine*, 75 F.3d 716, 725 (1st Cir. 1996). A "tangible employment action in most cases inflicts direct economic harm." *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 762, 118 S.Ct. 2257 (1998). "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth*, 524 U.S. at 765, 118 S.Ct. 2257; *Kohler v. Inter-Tel*

12

1   *Technologies*, 244 F.3d 1167, 1179 (9th Cir. 2001).

2         A plaintiff's displeasure "by an employer's act or omission does not elevate that act or omission

3   to the level of a materially adverse employment action." *Blackie*, 75 F.3d at 725. To qualify as adverse,

4   the action must be "more disruptive than a mere inconvenience or alteration of job responsibilities. A

5   materially adverse change might be indicated by a termination of employment, a demotion evidenced

6   by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly

7   diminished material responsibilities, or other indices that might be unique to a particular situation."

8   *Crady v. Liberty Nat. Bank and Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993); *see Brooks v. City of San*

9   *Mateo*, 229 F.3d 917, 928 (9th Cir. 2000) (adverse employment actions may include "termination,

10  dissemination of a negative employment reference, issuance of an undeserved negative performance

11  review and refusal to consider for promotion"). A "transfer involving only minor changes in working

12  conditions and no reduction in pay or benefits [does] not constitute an adverse employment action."

13  *Ledergerber v. Stangler*, 122 F.3d 1142, 1144 (8th Cir. 1997); *Zhuang v. Datacard Corp.*, 414 F.3d 849,

14  854 (8th Cir. 2005). "[M]ere ostracism in the workplace is not enough to show an adverse employment

15  decision." *Strother v. So. Cal. Permanente Medical Group*, 79 F.3d 859, 869 (9th Cir. 1996).

16        As the Navy notes, Mr. Hill complains that employees publicly stated that he was senile and

17  irrational and that he was subjected to a fraudulent RIF and threats of death and criminal prosecution

18  and was denied unidentified benefits. The Navy points out that the complained of matters, including the

19  RIF, did not change Mr. Hill's grade, salary or benefits. In the absence of demotion or denied

20  promotion, the Navy argues that Mr. Hill was not subjected to adverse employment action. The Navy

21  points out that Mr. Hill voluntarily retired and was not terminated. Resignations are presumed

22  voluntary. *Cruz v. Dep't of Navy*, 934 F.2d 1240, 1244 (Fed. Cir. 1991); *Christie v. United States*, 518

23  F.2d 584, 587, 207 Ct.Cl. 333 (1975). The fact that an employee is faced with an unpleasant situation

24  or must choose between unpleasant alternatives does not transform the resulting action involuntary

25  unless there is deception, coercion, duress, time pressure or intimidation. *Taylor v. United States*, 591

26  F.2d 688, 692 Ct. Cl. 1979).

27        The Navy is correct. The record reveals no evidence of an adverse employment action. Mr.

28  Hill's grade, salary and benefits were unaffected by the RIF. His conduct and obstruction resulted in the

1    Navy's proposal to remove him.  Mr. Hill's complaints of self-manufactured trivialities do not equate

2    to adverse employment action.

3                                  ***Constructive Discharge***

4           The Navy argues that Mr. Hill's voluntary retirement does not equate to a constructive discharge.

5    In *Watson v. Nationwide Ins. Co.*, 823 F.2d 360, 361 (9th Cir. 1987), the Ninth Circuit Court of Appeals

6    articulated standards for constructive discharge:

7                   A constructive discharge occurs when, looking at the totality of the
             circumstances, "a reasonable person in [the employee's] position would have felt that he
8            was forced to quit because of intolerable and discriminatory working conditions."
             *Satterwhite v. Smith*, 744 F.2d 1380, 1381 (9th Cir. 1984); *Nolan v. Cleland*, 686 F.2d
9            806, 812 (9th Cir. 1982).  This test establishes an objective standard; the plaintiff need
             not show that the employer subjectively intended to force the employee to resign.  *See*
10           *Satterwhite*, 744 F.2d at 1383; *Nolan*, 686 F.2d at 814 n. 17.  "As a result, the answer
             turns on the facts of each case."  *Satterwhite*, 744 F.2d at 1382.

11

12   To survive summary judgment on a constructive discharge claim, a plaintiff must show there are triable

13   issues of fact whether a reasonable person in plaintiff's position would have felt that he/she was forced

14   to quit due to intolerable and discriminatory working conditions.  *Hardage v. CBS Broadcasting, Inc.*,

15   427 F.3d 1177, 1184 (9th Cir. 2005); *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1465 (9th Cir.

16   1994).

17          The Navy contends that Mr. Hill's voluntarily retirement arose from the Navy's intended removal

18   of Mr. Hill, not intolerable working conditions.  The Navy notes that Mr. Hill submitted his retirement

19   paper work two days after the Navy's notice of removal.  According to the Navy, Mr. Hill voluntarily

20   retired in the face of serious charges against him and not due to discriminatory working conditions.  The

21   Navy points to the absence of a connection between its actions and Mr. Hill's age, especially since Mr.

22   Hill was not replaced by a younger employee with equal or inferior qualifications.

23          The evidence of record does not support a constructive discharge claim.  Mr. Hill triggered the

24   Navy's proposed removal with his failure to perform and disobedience of work directives.  Nothing

25   before this Court suggests that Mr. Hill was forced to quit due to intolerable, discriminatory working

26   conditions.  Neither direct nor circumstantial evidence supports a prima facie case for Mr. Hill's (first)

27   age discrimination/retaliation cause of action.

28   / / /

                                                    14

### *Legitimate, Non-Discriminatory Reasons And Pretext*

_____Putting aside prima facie case elements, the Navy argues that Mr. Hill fails to rebut its legitimate, nondiscriminatory grounds for its actions.  The Navy notes that its 1999 RIF arose to implement commercial outsourcing and from factors such as funding reductions, workload realignments and unresolved skills imbalances.  Mr. Hill's position was eliminated, and he was transferred to a different IT department position.  "Job elimination or office consolidation is a sufficient nondiscriminatory reason for discharge under the ADEA."  *Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 150 (5th Cir. 1995).  The Navy argues that Mr. Hill's failure to perform his duties supported the Navy's proposal to remove Mr. Hill.

Looking beyond the grounds for its actions, the Navy contends that Mr. Hill provides no evidence to raise a factual issue whether its reasons for the RIF or proposal to remove Mr. Hill were a pretext for discrimination.  To determine pretext, the ultimate question is whether more likely than not the employer's conduct was motivated by intentional discrimination.  *Sischo-Nownejad v. Merced Community College Dist.*, 934 F.2d 1104, 1109 (9th Cir. 1991).  A plaintiff may establish pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089.  "[A] plaintiff at the pretext stage must produce evidence in addition to that which was sufficient for her prima facie case in order to rebut the defendant's showing." *Godwin*, 150 F.3d at 1220; *see Wallis*, 26 F.3d at 890.  "When the plaintiff offers direct evidence of discriminatory motive, a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial." *Godwin*, 150 F.3d at 1221.

In the absence of direct evidence, "the plaintiff must come forward with circumstantial evidence that tends to show that the employer's proffered motives were not the actual motives because they are inconsistent or otherwise not believable." *Godwin*, 150 F.3d at 1222.   The Ninth Circuit Court of Appeals has explained:

> In response to the defendant's offer of nondiscriminatory reasons, the plaintiff must produce "specific, substantial evidence of pretext." *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983).  In other words, the plaintiff "must tender a genuine issue of material fact as to pretext in order to avoid summary judgment." *Id.*

1          . . .

2          . . . We hold that, when evidence to refute the defendant's legitimate explanation is
          totally lacking, summary judgment is appropriate even though plaintiff may have
3          established a minimal *prima facie* case based on a *McDonnell Douglas* type proposition.

4     *Wallis*, 26 F.3d at 890-891 (addressing age discrimination).

5          A plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies,

6     or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder

7     could rationally find them 'unworthy of credence,' [citation], and hence infer 'that the employer did not

8     act for the [asserted] non-discriminatory reasons.' [citations.]" *Fuentes v. Perksie*, 32 F.3d 759, 765 (3rd

9     Cir. 1994); *Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061, 1072 (3rd Cir. 1996), *cert.

10    denied*, 521 U.S. 1129, 117 S.Ct. 2532 (1997); *Stewart v. Rutgers, The State University*, 120 F.3d 426

11    (3rd Cir. 1997).  "If a plaintiff succeeds in raising a genuine factual issue regarding the authenticity of

12    the employer's stated motive, summary judgment is inappropriate because it is for the trier of fact to

13    decide which story is to be believed." *Washington v. Garrett*, 10 F.3d 1421, 1433 (9th Cir. 1993).  A

14    "disparate treatment plaintiff can survive summary judgment without producing any evidence of

15    discrimination beyond that constituting his prima facie case, if that evidence raises a genuine issue of

16    material fact regarding the truth of the employer's proffered reasons." *Chuang*, 225 F.3d at 1127.  A

17    factual issue can be created only by "a conflict of evidence," not "by speculation or conjecture." *Horn

18    v. Cushman & Wakefield Western, Inc.*, 72 Cal.App.4th 798, 807, 85 Cal.Rptr.2d 459 (1999).

19         The evidence of legitimate, non-discriminatory reasons for the Navy's actions benefits Mr. Hill

20    no better than the evidence of lack of a prima facie case of discrimination.  Mr. Hill fails to challenge

21    the reasons for the Navy's actions of which he complains.  The record indicates that the RIF was

22    legitimate to reassign Mr. Hill's duties.  Again, Mr. Hill caused his demise with his failure to perform

23    duties and disobedience of work directives.  There is not even the slightest hint of pretext for the Navy's

24    actions.  In the absence of evidence for a prima facie discrimination case and pretext, Mr. Hill's (first)

25    age discrimination/retaliation cause of action fails.

26                              **Title VII Retaliation Cause Of Action**

27         Under Title VII, an employer engages in an unlawful employment practice by discriminating

28    against an employee "because he has opposed any practice made an unlawful employment practice by

16

[Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a).

### *Prima Facie Case And Shifting Burdens*

To establish a prima facie Title VII retaliation case, a plaintiff must show that: (1) he/she engaged in a protected activity; (2) a reasonable employee would have found the challenged retaliatory action materially adverse; and (3) the materially adverse action was causally linked to the protected activity. *Burlington N. & Santa Fe Ry. Co. v. White*, __ U.S. __, 126 S.Ct. 2405, 2415 (2006) ; *Steiner*, 25 F.3d at 1464; *Jordan v. Clark*, 847 F.2d 1368, 1376 (9th Cir. 1988), *cert. denied*, 488 U.S. 1006, 109 S.Ct. 786 (1989).  If plaintiff establishes a prima facie case, the burden of production shifts to the defendant employer to advance legitimate, non-retaliatory reasons for any adverse actions taken against plaintiff, who has the ultimate burden to show that the defendant employer's proffered reasons are pretextual.  *Stegall v. Citadel Broadcasting Co.* 350 F.3d 1061, 1066 (9th Cir. 2003); *Steiner*, 25 F.3d at 1464-1465; *Jordan*, 847 F.2d at 1376; *Miller v. Fairchild Industries, Inc.*, 797 F.2d 727, 730-731 (9th Cir. 1986) (order and allocation of proof for retaliation claims follow familiar scheme announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973)).

### *Material Adversity*

Conceding that Mr. Hill engaged in protected activity of filing EEO complaints, the Navy disputes material adversity of its alleged retaliatory action.  As the Navy notes, Mr. Hill supports his Title VII retaliation claim with allegations that: (1) Mr. Hill received a death threat; (2) the Navy framed an EEO complainant for selling drugs; (3) Navy employees made false and perjured statements; (4) the Navy suppressed and destroyed evidence; (5) Mr. Hill was subjected to a fraudulent RIF; (5) the Navy issued a close ranks order against Mr. Hill, precluded his office travel and banned him from breakfast meetings; and (6) Mr. Hill was terminated/forced to retire.

Title VII's anti-retaliation provision (42 U.S.C. § 2000e-3(a)) "covers those (and only those) employer actions that would have been materially adverse to a reasonable employee" and requires a plaintiff to show " that the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *White*, __ U.S. __, 126 S.Ct. at 2409, 2415.  The U.S. Supreme Court further explained adverse materiality:

17

1
2
3

We speak of *material* adversity because we believe it is important to separate significant from trivial harms. . . . An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience. . . .

4

We refer to reactions of a *reasonable* employee because we believe that the provision's standard for judging harm must be objective. . . .

5
6

We phrase the standard in general terms because the significance of any given act of retaliation will often depend upon the particular circumstances.  Context matters. . . .

7
8
9

. . . By focusing on the materiality of the challenged action and the perspective of a reasonable person in plaintiff's position, we believe this standard will screen out trivial conduct while effectively capturing those acts that are likely to dissuade employees from complaining or assisting in complaints about discrimination.

10  *White*, __ U.S. __, 126 S.Ct. at 2415-2416 (italics in original).

11       The Navy points to the absence of "a single, plausible action that can be found to be materially

12  adverse such that a <u>reasonable</u> person would have been dissuaded from making a claim of

13  discrimination." (Italics in original.)  The Navy further notes the lack of a constructive discharge claim

14  and that under the factual context, Mr. Hill's remaining adverse action claims are implausible.

15       No evidence supports the material adversity prong of a prima facie case for Title VII retaliation.

16  The record is bare that the Navy's actions were so harmful to dissuade a reasonable worker to make or

17  support discrimination charges.  In fact, the evidence indicates that Mr. Hill was accomplished at making

18  five EEO complaints, the last of which he amended 14 times.

19                                          ***Causal Link***

20       The Navy argues that Mr. Hill fails to establish a causal link between protected activity and its

21  actions.  To establish causation for a retaliation claim, a plaintiff must show by a preponderance of

22  evidence that engaging in the protected activity was a reason for adverse action and that but for such

23  activity, plaintiff would not have been subjected to adverse action.  *See Villiarimo v. Aloha Island Air,*

24  *Inc.*, 281 F.3d 1054, 1064-1065 (9th Cir. 2002).  Although causation may be inferred from adverse action

25  "on the heels of protected activity," the adverse action must have occurred "fairly soon" after protected

26  activity.  *Villiarimo*, 281 F.3d at 1065; *see  Jones v. Lyng*, 669 F.Supp. 1108, 1121 (D.D.C. 1986) (a

27  retaliatory motive is "proved by showing that plaintiff engaged in protected activities, that his employer

28  was aware of the protected activities, and that the adverse action followed within a relatively short time

18

thereafter").  "The causal link may be established by an inference derived from circumstantial evidence, 'such as the employer's knowledge that the [plaintiff] engaged in protected activities and the proximity in time between the protected action and allegedly retaliatory employment decision." *Jordan*, 847 F.2d at 1376 (9th Cir. 1988).

The Navy notes that Mr. Hill's direct and circumstantial evidence fails to establish the requisite causal link, especially in the absence of materially adverse action closely following his EEO complaints. As the Navy points out, the RIF arose two years after Mr. Hill's initial EEO complaint, and Mr. Hill remained employed five years after his first EEO complaint and 10 months after his fifth EEO complaint.

The Navy is correct as to the absence of a causal link between Mr. Hill's EEO complaints and the Navy's actions.  Mr. Hill's grades, salary and benefits remained unchanged despite his EEO complaints.  The evidence, construed in Mr. Hill's favor, fails to reflect that Mr. Hill's protected activity even contributed to the actions of which he complains.

### *Legitimate, Non-Retaliatory Reasons And Absence Of Pretext*

Putting aside Mr. Hill's prima facie case of Title VII retaliation, the Navy argues that Mr. Hill fails to rebut the Navy's legitimate, non-retaliatory reasons for its actions.  The Navy argues that it need only produce evidence of a non-retaliatory reason for its conduct and that it has produced such evidence to support the RIF and Mr. Hill's proposed removal.  The Navy continues that Mr. Hill is unable to establish pretext for the Navy's actions.

"An employee is not protected by Title VII when he violates legitimate company rules, knowingly disobeys company orders, disrupts the work environment of his employer, or willfully interferes with the attainment of the employer's goals." *Unt v. Aerospace Corp.*, 765 F.2d 1440, 1447 (9th Cir. 1985).  Mr. Jacobson demonstrates that Mr. Hill provided no work product for months and disobeyed direct orders to disrupt operations of the IT department and weapons division.  Mr. Hill's disruption equates to legitimate, non-retaliatory grounds for the Navy's proposal to remove Mr. Hill. As discussed above, the RIF was legitimately supported.  Mr. Hill's (second) Title VII retaliation cause of action fails in similar fashion as his (first) age discrimination/retaliation cause of action.

/ / /

**Failure To Accommodate Cause Of Action**

The Navy contends that Mr. Hill's (third) failure to accommodate cause of action fails with the absence of Mr. Hill's impairment. The Navy notes Mr. Hill's claimed disabilities of perceived senility, stress, hypertension and dental problems.

The Retaliation Act requires government agencies to accommodate reasonably an employee's disability. *McLean v. Runyon*, 222 F.3d 1150, 1153 (9th Cir. 2000); *see* 29 U.S.C. § 794. To determine whether a federal agency violates the Rehabilitation Act, the standards under Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et seq., apply. *McLean*, 222 F.3d at 1153; *see* 29 U.S.C. §§ 791(g), 794(d). Under the ADA, an individual is disabled if he/she: (1) has a physical or mental impairment that substantially limits one or more of his/her major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. *Deppe v. United Airlines*, 217 F.3d 1262, 1265 (9th Cir. 2000) (citing 42 U.S.C. § 12102(2)).

Under the ADA, a claimant must initially prove that he/she has a physical or mental impairment. *Toyota Motor Manufacturing v. Kentucky, Inc.*, 534 U.S. 184, 194, 122 S.Ct. 681, 690 (2002). A mere impairment does not equate to disability for ADA purposes. *Toyota Motor*, 534 U.S. at 195, 122 S.Ct. at 690. Claimants must demonstrate that the impairment is a "substantial" limitation on a major life activity, such as walking, seeing, hearing or performing manual tasks. *Toyota Motor*, 534 U.S. at 195, 122 S.Ct.at 690. A "substantial" limitation precludes impairments that interfere in only a "minor way" with a major life activity. *See Toyota Motor*, 534 U.S. at 197, 122 S.Ct. at 691. "Major life activities" refer to activities of "central importance to daily life." *Toyota Motor*, 534 U.S. at 197, 122 S.Ct. at 691. The ADA requires claimants "to prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience . . . is substantial." *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 567, 119 S.Ct. 2162 (1999). A substantial limitation of a major life activity of working refers to being "'significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.'" *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491, 119 / / /

1   S.Ct. 2139 (citing 29 C.F.R. § 1630.2(j)(3)(I)).[2]

2        The Navy contends that Mr. Hill lacks a physical or mental impairment that substantially limits
3   a major life activity.  The Navy points to evidence, including Mr. Hill's deposition testimony, that Mr.
4   Hill is able to care for himself, perform manual tasks, walk, see, hear, speak, breathe, learn and work.
5   The Navy notes the absence of Mr. Hill's diagnosis of senility or dementia and of a significant current
6   or permanent impairment (per treating physician Dr. Ferguson).  The Navy concludes that the major life
7   activity of working is not substantially limited because Mr. Hill is unable to work with particular
8   employees and claimed anxiety and stress therefrom.  *See Gaul v. Lucent Technologies, Inc.*, 134 F.3d
9   576, 580, n. 3 ("plaintiff who is unable to work with individuals who cause him 'prolonged and
10  inordinate stress' cannot be said to be incapable of performing a 'class of jobs or a broad range of jobs
11  in various classes'"); *Siemon*, 117 F.3d at 1176 (claim that mental impairment merely prevented plaintiff
12  to work under a few supervisors of a major corporation was too narrow to constitute a class of jobs).

13       The Navy further challenges Mr. Hill's (third) failure to accommodate cause of action in that Mr.
14  Hill lacks a medical record of an impairment that substantially limits a major life activity.  "Absent a
15  disability . . . no obligations are triggered for the employer." *Soileau v. Guilford of Maine, Inc.*, 105 F.3d
16  12, 15 (1st Cir. 1997).  "To have a record of such an impairment, a plaintiff must have a history of, or
17  been misclassified as having, an impairment that substantially limited a major life activity." *Santiago
18  Clemente v. Executive Airlines, Inc.*, 213 F.3d 25, 33 (1st Cir. 2000); *see* 29 C.F.R. § 1630.2(k).

19       Again, the Navy is correct.  The record is deficient of Mr. Hill's impairment that substantially
20  limits one or more of his major life activities.  Mr. Hill's complaints of inability to work with certain
21  Navy employees are insufficient.  Moreover, the absence of supporting medical documentation dooms
22  Mr. Hill's failure to accommodate cause of action.

23       The Navy further contends that Mr. Hill lacks evidence that the Navy regarded him as having
24  an impairment that substantially limits a major life activity.  Individuals who are "regarded as" having
25  a disability are disabled within the meaning of the ADA.  *Sutton*, 527 U.S. at 489, 119 S.Ct. at 2149;

26
27      [2]   The 10th Circuit Court of Appeals has explained that "to demonstrate that an impairment 'substantially
    limits' the major life activity of working, [plaintiff] must show a 'significant restriction in the ability to perform either a class
    of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and
28  abilities." *Siemom v. AT & T Corp.*, 117 F.3d 1173, 1176 (10th Cir. 1997).

1    *see* 42 U.S.C. § 12102(2)(C). The ADA provides that having a disability includes "being regarded as

2    having," 42 U.S.C. § 12102(2)(C), "a physical or mental impairment that substantially limits one or

3    more of the major life activities of such individual," 42 U.S.C. § 12102(2)(A). There are two apparent

4    ways in which individuals may fall within this statutory definition: (1) a covered entity mistakenly

5    believes that a person has a physical impairment that substantially limits one or more major life

6    activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially

7    limits one or more major life activities. *Sutton*, 527 U.S. at 489, 119 S.Ct. at 2149-2150.

8          There is no evidence that the Navy was under the mistaken impression that Mr. Hill had an

9    impairment, actual or not. to substantially limit one or more major life activities.  In fact, the evidence

10   before it, including that of treating physician Dr. Ferguson, suggested otherwise.  In the absence of

11   supporting evidence, Mr. Hill's (third) failure to accommodate cause of action fails.

12                        **Title VII Wrongful Termination Cause Of Action**

13         The Navy contends that Mr. Hill's (fourth) Title VII wrongful termination cause of action fails

14   in that Title VII does no prohibit age discrimination and Mr. Hill is unable to establish actionable

15   retaliation as discussed above.  The Navy correctly notes that Title VII limits its focus to discrimination

16   based on race, color, religion, sex or national origin.  42 U.S.C. § 2000e-2(a)-(d).  Age discrimination

17   is not a focus of Title VII and in the absence of actionable Title VII wrongful termination and retaliation

18   claims, Mr. Hill's (fourth) Title VII wrongful termination cause of action fails.

19                              **Failure To Process Cause Of Action**

20         Mr. Hill claims that his EEO complaints were not processed promptly and fairly.  This Court has

21   dismissed Mr. Hill's failure to process claims in an action consolidated herewith.  Mr. Hill's failure to

22   process claims are not resurrected and remain barred.  Moreover, Congress has not authorized, expressly

23   or impliedly, a cause of action for alleged negligence or malfeasance to process employment

24   discrimination charges. *See Smith v. Casellas*, 119 F.3d 33, 34 (D.C. Cir.); *cert. denied*, 522 U.S. 958,

25   118 S.Ct. 386 (1997); *Ward v. EEOC*, 719 F.2d 311, 312 (9th Cir. 1983), *cert. denied*, 104 S.Ct. 2159

26   (1984).  Mr. Hill's (fifth) failure to process cause of action remains barred.

27                                **CONCLUSION AND ORDER**

28         For the reasons discussed above, this Court:

1    1.    GRANTS defendant Gordon R. England, Secretary of the Navy, summary judgment on

plaintiff Bryan L. Hill's causes of action; and

2.    DIRECTS this Court's clerk to enter judgment in favor of defendant Gordon R. England,

Secretary of the Navy, and against plaintiff Bryan L. Hill and to close this action.

IT IS SO ORDERED.

**Dated:    October 22, 2007                      /s/ Lawrence J. O'Neill**
UNITED STATES DISTRICT JUDGE

23